**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MARVIN BERNARD PULLIAM,

               Petitioner,

                                    CASE NO. 05-CV-74877-DT
v.                                HONORABLE LAWRENCE P. ZATKOFF

KENNETH ROMANOWSKI,

             Respondent.
_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

**I. Introduction**

Marvin Bernard Pulliam ("Petitioner"), a state prisoner presently confined at the Parr Highway Correctional Facility in Adrian, Michigan, has filed a *pro se* petition for writ of habeas corpus asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of two counts of armed robbery and one count of conspiracy to commit armed robbery following a jury trial in the Saginaw County circuit court in 2003. He was sentenced as a second habitual offender to concurrent terms of 10 to 30 years imprisonment. In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence for his conspiracy conviction, the jury instructions, untimely discovery, and tainted pre-trial identification. For the reasons set forth below, the Court denies the petition for writ of habeas corpus.

**II. Facts**

Petitioner's convictions stem from the armed robbery of David and Deborah Ozark in Saginaw County, Michigan on May 19, 2002. Petitioner was charged with two counts of armed

robbery and one count of conspiracy to commit armed robbery. His co-conspirator was identified as Kevin Powell. Prior to trial, Petitioner moved to suppress the victims' identification of him as one of the perpetrators of the robbery, alleging that the victims' identification was tainted because they had observed him in an orange jail uniform at the preliminary examination. The trial court conducted a hearing on this matter, but denied the motion finding that the victims' identification was sufficiently reliable.

At trial, David Ozark testified that he and his wife were walking home from a store near midnight on May 18, 2002, when the robbery occurred. Kevin Powell, driving a van, slowed down near them, drove past, then circled the block, and approached them again. When the van stopped, Petitioner jumped out, put a pipe in Mr. Ozark's back, implying that it was a gun, and forced the Ozarks into the van. Petitioner, the driver, and a woman were in the van. Once inside the van, Petitioner and Powell yelled at them to give them money and other property and threatened them with harm if they did not comply. Petitioner went through Mr. Ozark's pockets, taking his wallet, rings, and other personal property while Powell held him down. Petitioner also took a ring from Mrs. Ozark. Mr. Ozark identified rings recovered by police as those taken from him and his wife during the robbery. Petitioner and Powell eventually let the Ozarks out of the van and drove away. The Ozarks returned home and called the police at about 1:16 a.m. on May 19, 2002. The police took them to a van which was not the right one, but they later identified the correct van. Mr. Ozark identified a picture of the van at trial.

Deborah Ozark corroborated Mr. Ozark's testimony about the robbery and identified Petitioner as one of the perpetrators. She estimated that they were in the van about 10 minutes and admitted that she was afraid during the robbery.

2

Pamela Weems, an acquaintance of Petitioner, testified that she was in the van with Powell and Petitioner when the robbery occurred. She described the robbery in a manner similar to the Ozarks. She also testified that Petitioner and Powell argued about splitting the proceeds from the robbery after the incident.

The police testified that the Ozarks described the van used in the robbery as a full-sized, white van with a blue stripe on the side and described one of the perpetrators as a black man, six feet two or three inches tall with a thin build, and 30 to 35 years old. The police apprehended Petitioner, Powell, and Weems in their van at approximately 1:30 a.m., shortly after the robbery was reported. They found Mr. Ozark's class ring on the floor of the van and found a pipe in Petitioner's jacket.

Petitioner testified in his own defense at trial. He denied participating in the robbery and claimed that he had just entered the van when the police arrived. He also said that the pipe found in his jacket was a steel tube for fireworks.

At the close of trial, the court instructed the jury on the charged offenses and other matters. The court's instructions included the standard conspiracy instruction. There were no objections to the instructions as given.

Following deliberations, the jury found Petitioner guilty of two counts of armed robbery and one count of conspiracy to commit armed robbery. The trial court subsequently sentenced him as a second habitual offender to concurrent terms of 10 to 30 years imprisonment.

### III. Procedural History

Following his convictions and sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting the following claims:

I. Defendant was deprived of his Ams V and XIV rights of due process to be free of conviction of conspiracy in the absence of proof beyond a reasonable

doubt.

II. Defendant was deprived of his Ams V and XIV rights of due process when the court omitted the name of the specific conspirator from the instructions.

III. Defendant was deprived of his Ams V and XIV right of due process when the prosecutor failed to afford defense counsel timely discovery.

IV. Defendant was deprived of his Ams V and XIV right of due process and his Am VI right to a fair trial when he was subjected to suggestive in-court identification.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Pulliam*, No. 247550, 2004 WL 1753039 (Mich. Ct. App. Aug. 5, 2004) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Pulliam*, 472 Mich. 894, 695 N.W.2d 75 (2005). Petitioner's motion for reconsideration was also denied. *People v. Pulliam*, 473 Mich. 886, 699 N.W.2d 703 (2005).

Petitioner thereafter filed the present habeas petition, raising the same claims presented to the state courts on direct appeal of his convictions. Respondent has filed an answer to the petition asserting that it should be denied. Petitioner has filed a reply to that answer.

### IV. Analysis

**A. Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of

5

[Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

**B.     Insufficient Evidence Claim**

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence of conspiracy to support his conviction on that charge. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Under Michigan law, a conspiracy involves the mutual agreement or understanding, express or implied, between two or more persons to commit a criminal act or a legal act by unlawful means. *See* Mich. Comp. Laws § 750.157a; *People v. Anderson*, 418 Mich. 31, 36, 340 N.W.2d 634 (1983). Conspiracy may be established by circumstantial evidence and may be based on inference. *See*

6

*People v. McKenzie*, 206 Mich. App. 425, 428, 522 N.W.2d 661 (1994). Direct proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. *See People v. Justice (after remand)*, 454 Mich. 334, 347, 562 N.W.2d 652 (1997).

To sustain a conviction for conspiracy to commit armed robbery, the prosecution must prove that defendant knowingly entered into an agreement with at least one other person to commit armed robbery. *See People v. Barker*, No. 253403, 2005 WL 562809, *2 (Mich. App. March 10, 2005). The elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See* Mich. Comp. Laws § 750.529; *People v. Allen*, 201 Mich. App. 98, 100, 505 N.W.2d 869 (1993).

Applying the *Jackson* standard to Petitioner's claim that the trial court erred in a denying his directed verdict motion, the Michigan Court of Appeals concluded that the prosecution presented sufficient evidence to justify submitting the conspiracy charge to the jury. The court stated in relevant part:

> At the time defendant moved for a directed verdict on the conspiracy charge, the prosecution had presented evidence that defendant and Kevin Powell worked together to lure David and Deborah Ozark into a van to rob them: Powell slowed his van and passed the Ozarks, then circled back to them and stopped; defendant jumped out of the van and put a tire iron to David Ozark's back, forcing the Ozarks into the van; once inside, Powell held David Ozark down while defendant frisked him and took his wallet and class ring; defendant demanded and took Deborah Ozark's wedding ring; defendant and Powell were both yelling at the Ozarks to relinquish their personal property; and following the robbery, defendant and Powell divided up the proceeds between themselves. Viewing the evidence in the light most favorable to the prosecution, we find that the trial court properly denied defendant's motion for a directed verdict. There was sufficient evidence that defendant and Powell agreed to rob the Ozarks, based on the "circumstances, acts, and conduct of the parties," so as to warrant submitting the conspiracy charge to the

7

jury. *Gay, supra* at 471. Therefore, defendant is not entitled to relief on this basis. *Pulliam*, 2004 WL 1753039 at *1.

Having reviewed the record, the Court concludes that the Michigan Court of Appeals' decision is consistent with *Jackson* and constitutes a reasonable application of the law and the facts. The Court finds that the prosecution presented sufficient evidence to support Petitioner's conspiracy conviction. The victims' testimony and that of witness Pamela Weems, viewed in a light favorable to the prosecution, established that Petitioner and Powell agreed to commit the armed robberies of the Ozarks, worked together to accomplish this task, and divided the proceeds following the robbery. The testimony also indicated that Petitioner was armed with a pipe, which the victims thought could be a gun, and that Petitioner and Powell assaulted the victims while taking their property. The conduct of Petitioner and Powell in committing the crime and the circumstances of this case supported the jury's verdict of guilt beyond a reasonable doubt on the conspiracy charge. Accordingly, habeas relief is not warranted on this claim.

### C. Jury Instruction Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court omitted the name of the specific co-conspirator from the jury instructions on conspiracy. Respondent contends that this claim is barred by procedural default and lacks merit.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default. *Wainwright*, 433 U.S. at 85; *Coleman v.*

*Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion on the jury instruction issue. In dismissing the claim, the court relied upon Petitioner's failure to object at trial. *See Pulliam*, 2004 WL 1753039 at *1-2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals dismissed the jury instruction claim

based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse his default. A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See, e.g., Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Furthermore, even if Petitioner could establish cause, he cannot establish prejudice as his claim lacks merit. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial court record. *See Grant v. Rivers*, 920 F. Supp. 769, 784 (E.D. Mich. 1996). State law instructional errors rarely form the basis for federal habeas corpus relief. *Estelle*, 502 U.S. at 71-72.

The Michigan Court of Appeals found no plain error with respect to the challenged jury instruction, stating:

> Here, the trial court instructed the jury that "[t]o prove the defendant's guilt, the prosecutor must prove ... beyond a reasonable doubt ... that the defendant and someone else knowingly agreed to commit armed robbery." *See* CJI2d 10.1. Defendant argues that the trial court erred in failing to specifically name Powell as the co-conspirator, and relies on this Court's decision in *People v. Smith*, 85 Mich. App. 404; 271 N.W.2d 252 (1978), *rev'd on other grounds* 406 Mich. 945; 277 N.W.2d 642 (1979), to support his argument that such an omission amounted to reversible error. But unlike the situation in *Smith*, the evidence in this case did not lead the jury to be confused about the identity of defendant's co-conspirator. Instead, the record supports a finding that both defendant and the jury were clearly aware that defendant was charged with conspiring with Powell to rob the Ozarks. Therefore, relief is unwarranted because the instructions fairly presented the issues to be tried, and there was no plain error affecting defendant's substantial rights.

*Pulliam*, 2004 WL 1753039 at *2.

Having reviewed the matter, this Court agrees and finds that the Michigan Court of Appeals' determination is consistent with United States Supreme Court precedent and constitutes a reasonable application of federal law and the facts. Given the testimony and arguments at trial, the jury was well aware that Petitioner's alleged co-conspirator was Kevin Powell. Petitioner cannot establish that the conspiracy instruction rendered his trial fundamentally unfair.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995); *Murray*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. His jury instruction claim is thus barred by procedural default and

11

otherwise lacks merit. Therefore, it does not warrant habeas relief.

        **D.**        **Discovery Claim**

Petitioner next asserts that he is entitled to habeas relief because the prosecutor did not provide the defense with timely discovery when Petitioner's and his co-defendant's police statements were not given to defense counsel until the third day of trial. Respondent contends that Petitioner waived this issue at trial and that the claim lacks merit.

As noted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright*, 433 U.S. at 85. The Michigan Court of Appeals rendered the last reasoned opinion discussing this issue and found that Petitioner, through counsel, waived this issue by stating that the defense would not be prejudiced by the late disclosure and agreeing to proceed without delay or continuance. *See Pulliam*, 2004 WL 1753039 at *2. The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. *See Coleman*, 501 U.S. at 750-51.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Id*. at 753. Petitioner neither alleges nor establishes cause to excuse his default. He also cannot establish prejudice as this claim lacks merit.

It is well-settled that there is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). A prosecutor's failure to disclose evidence favorable to the defense constitutes a

12

denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley,* 473 U.S. at 682; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Mullins v. United States*, 22 F.3d 1365, 1370-71 (6th Cir. 1994).

Thus, in order to establish a *Brady* claim, a petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The petitioner bears the burden of establishing a *Brady* violation. *Carter*, 218 F.3d at 601.

Although the Michigan Court of Appeals found this claim to be waived, it also determined that the claim lacked merit. The court found that Powell's statement was inculpatory and that the evidence was not sufficiently material because there was no reasonable probability that the result

13

of the proceeding would have been different had the evidence been disclosed earlier. *See Pulliam*, 2004 WL 1753039 at *2, n. 1 (citing *Brady*, 373 U.S. at 87).

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. Petitioner has not met his burden of establishing a *Brady* violation. First, the statements were not suppressed given that they were disclosed to the defense during trial. Second, Petitioner was aware of his own statements to police and has not shown that such information was in the sole possession of the prosecution. Third, Powell's statement was inculpatory since he admitted that he and Petitioner robbed the victims. Fourth, Petitioner has not shown that the statements were sufficiently material. Exculpatory evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 676. There is no such reasonable probability here. The evidence was eventually disclosed during trial and Petitioner has not shown that the delay in disclosure prejudiced his defense. He has thus failed to establish prejudice, as well as cause, to excuse his default. Moreover, as discussed above, he has not shown that a fundamental miscarriage of justice has occurred. *See Schlup*, 513 U.S. at 326-27. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

### E. Tainted Identification Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the Ozarks' identification of him as the perpetrator was tainted by an inherently suggestive pre-trial identification procedure since they saw him dressed in an orange jail uniform at the preliminary examination. Respondent contends that this claim lacks merit and does not warrant habeas relief.

14

A conviction based on identification testimony following pre-trial identification violates due process when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). An in-court identification by a witness to whom the accused was exhibited before trial in an unduly suggestive manner must be excluded unless it can be established that the identification has an independent origin which is not tainted by the suggestive pre-trial identification procedures. *See Wade v. United States*, 388 U.S. 218, 241 (1967).

A two-step analysis applies to decisions concerning the admissibility of identification evidence. First, a court must determine whether the identification procedure was impermissibly suggestive. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992). Second, if the court finds that the identification procedure was impermissibly suggestive, the court must determine whether, under the totality of the circumstance, the testimony was nevertheless reliable. *See id.* "If the defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, then no due process violation has occurred." *Id.*

The United States Supreme Court has declared that "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). In *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972), the Supreme Court listed five factors that should be considered when evaluating reliability: (1) the witness's opportunity to view the perpetrator during the crime; (2) the witness's degree of attention during the crime; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the defendant at the confrontation; and (5) the length of time that has elapsed between

the crime and the confrontation. "The degree of reliability of the identification, as indicated by the above-stated factors, is to be considered in light of the degree of suggestiveness of the identification procedure and of the totality of the circumstances in determining whether due process requires suppression of the identification." *Manson*, 432 U.S. at 113-14.

The Michigan Court of Appeals denied relief on this claim, stating in relevant part:

In order to sustain a due process challenge, a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *People v. Kurylczyk*, 443 Mich. 289, 302; 505 N.W.2d 528 (1993). "The fact that the prior confrontation occurred during the preliminary examination ... does not necessarily mean that it cannot be considered unduly suggestive." *Colon, supra* at 304. However, "[s]imply because an identification procedure is suggestive does not mean it is constitutionally defective." *Kurylczyk, supra* at 306.

At a pre-trial hearing, defendant argued that the Ozarks' identification of him at the preliminary examination was impermissibly suggestive because he was wearing an orange jail uniform. However, we find no error in the trial court's decision that there was a sufficient independent basis from which the Ozarks could identify defendant. "When examining the totality of the circumstances [surrounding the pretrial identification procedure], relevant factors include: the opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation." *Colon, supra* at 304-305.

In the instant case, there is no dispute that the preliminary examination was a suggestive atmosphere in that defendant was wearing prison garb in the courtroom. *See Colon, supra* at 305. However, the Ozarks observed defendant for approximately ten minutes inside the van while they were being robbed, and were focused primarily on defendant, as he was the perpetrator primarily demanding their money and other personal property. Additionally, the description of defendant the Ozarks gave to the police immediately following the incident was fairly accurate and consistent with defendant's appearance and clothing. Finally, the Ozarks were unequivocal in their identification of defendant at the preliminary examination, which occurred less than three months after the incident.

Under the totality of the circumstances, defendant has failed to show that there was a substantial likelihood of misidentification. The prosecution showed, by clear and convincing evidence, that the Ozarks' identification of defendant had a sufficiently

independent basis and was not based on any suggestiveness surrounding the preliminary examination; therefore, the trial court's determination that the Ozarks' identification of defendant had an independent basis was not clearly erroneous.

*Pulliam*, 2004 WL 1753039, *2-3.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. A review of the record shows that the victims had ample opportunity to observe Petitioner during the robbery, that they provided the police with a reasonably accurate description of him, that their identifications of Petitioner as one of the perpetrators of the robbery were unequivocal, and that the time between the crime and the identifications was relatively short. Considering the totality of the circumstances, the Court concludes there was no substantial likelihood of misidentification at trial caused by the suggestive nature of the preliminary examination identification. A strong, independent basis for the victims' identification of Petitioner existed at trial. Habeas relief is, therefore, not warranted on this claim.

## V. Conclusion

The Court concludes that Petitioner is not entitled to habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.

**IT IS SO ORDERED**.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: June 19, 2007

CERTIFICATE OF SERVICE

       The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 19, 2007.

                                        s/Marie E. Verlinde
                                        Case Manager
                                        (810) 984-3290